IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CR-00128-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | MEMORANDUM AND |
| | ) | RECOMMENDATION |
| GARY STARKIE, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on the motion by Defendant Gary Starkie ("Defendant")

to suppress evidence seized by law enforcement officers on June 28, 2012. [DE-25]. The

government filed a response in opposition to the motion [DE-28], and the undersigned held an

evidentiary hearing on September 24, 2013, to further develop the record. Accordingly, this matter

is ripe for review. For the reasons stated below, it is recommended that Defendant's motion to

suppress be denied.

## I. PROCEDURAL BACKGROUND

On May 8, 2013, the Grand Jury charged Defendant by indictment with one count of being

a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924. [DE-1]. At the

suppression hearing, defendant presented no witness testimony, but in support of his motion

proffered his own affidavit [DE-33]. The government presented the testimony of Officer Warren

Keith Sawyer ("Officer Sawyer") of the Greenville Police Department, who apprehended Defendant

and seized evidence at the scene on June 28, 2012, including the firearm Defendant is charged with

possessing in the indictment. The government also submitted exhibits, including a map (Gov't Ex.

1), photographs (Gov't Exs. 2-4), and a sketch (Gov't Ex. 5) depicting the scene of events, as well

as police reports (Gov't Exs. 6[1] & 8), all of which were admitted into evidence over Defendant's

hearsay objection as to Exhibit 6.[2]

## II. STATEMENT OF THE FACTS

Officer Sawyer was the sole witness at the suppression hearing,[3] and the facts based on his

_____

[1] The document entitled Report of Investigation is a two page document marked as Government's Exhibits 6 & 7, with page one being Exhibit 6 and page two being Exhibit 7. For clarity, the court will refer to this document as simply Exhibit 6.

[2] The court overruled Defendant's objection to Exhibit 6 and admitted all exhibits into evidence for the purpose of the suppression hearing. *See* Fed. R. Evid. 1101(d)(1); *see e.g.*, *United States v. Raddatz*, 447 U.S. 667, 679 (1980) ("At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence wold not be admissible at trial."); *see United States v. Gray*, 491 F.3d 138, 149 (4th Cir. 2007) (stating "suppression hearings, while properly observant of due process, are not meant to replicate trials") (citation omitted); *United States v. Sanchez*, 555 F.3d 910, 922 (10th Cir. 2009) (upholding district court's reliance on police report in ruling on defendant's motion to suppress).

[3] Defendant did not testify at the suppression hearing, but set forth the following facts in his affidavit filed in support of his suppression motion:

> On or about June 28, 2012, at approximately 2300 hrs, I walked into the City Gas Station and Sweepstakes parking area, on Greene St. in Greenville, NC, where I met my brother Greg Starkie and his girlfriend.

> Immediately upon my arrival I opened the door to the Sweepstakes building and said hi to the girl working there, who I knew from having worked there in the past.

> I then proceeded to my brothers car where we began a conversation.

> Soon after my arrival a car with heavily tinted windows pulled into an area by the gas pumps.

> Almost immediately after the car pulled in, two officers, with guns drawn, exited the vehicle and began yelling at us. At this time I had moved to the rear of my brothers car. I then placed my hands on the top of the car, as instructed by the officers, and they came over and handcuffed me and my brother.

> Almost simultaneously with the officers leaving their car, 3 or 4 marked Greenville PD cars arrived from different directions.

> After seizing and arresting me, the officer appeared to reach under my brothers car and pull some item out, which he later alleged was a pistol.

> The officer placed me in one of the marked police cars and they transported me to the Pitt County Detention Center, where they charged me with being a Felon in possession of a Firearm.

> At no time did I commit a crime or even appear to be committing a crime before or during the officers appearance and I had no intention to give up my rights to privacy or to forfeit my rights under the U.S. Constitution.

2

testimony are as follows. Officer Sawyer is a fifteen-year veteran of the Greenville Police Department, currently assigned to the Special Operations Division, Impact II, a street level narcotics and crime suppression unit. Officer Sawyer was transporting an arrestee (unrelated to the present case) to the Pitt County Detention Center on June 28, 2012, at approximately 11:00 p.m., when he observed a person, whom he identified in court as Defendant, cross the street on foot approximately 50 yards in front of his police cruiser. Officer Sawyer noted Defendant was wearing a zipped up "flight jacket" and toboggan on a hot (approximately 82 degrees) and humid night, which Officer Sawyer found unusual and called to the attention of his partner, Officer Neague, who was seated in the rear of the police cruiser directly behind the arrestee. Officer Sawyer stopped at a traffic light and observed Defendant walk across the parking lot of City Gas, a gas station with a convenience store adjacent to an internet sweepstakes gaming business (the "Sweepstakes"). The City Gas and Sweepstakes are located in what Officer Sawyer termed a "hot spot," which is a heavily patrolled, high crime area. Defendant walked to the door of the Sweepstakes and tried the handle, but the door did not open. Defendant then began to speak to an individual, later identified as Defendant's brother, who was standing next to a vehicle that was already parked and idling in front of the Sweepstakes when Defendant arrived. After observing Defendant for approximately three to four minutes, Officer Sawyer pulled into the City Gas parking lot to further investigate what he considered to be suspicious behavior.

Officer Sawyer parked between two gasoline pumps approximately twenty feet from the

---

Aff. of Gary Starkie [DE-33].

To the extent the facts set forth in Defendant's affidavit contradict the hearing testimony of Officer Sawyer, having observed Officer Sawyer and assessing his demeanor on the witness stand under direct and cross examination, the court finds his testimony to be credible. *See United States v. Stevenson*, 396 F.3d 538, 542-43 (4th Cir. 2005)(noting that assessing the credibility of witnesses is the province of the district court).

3

vehicle parked in front of the Sweepstakes, exited the police cruiser, and approached Defendant and his brother, observing that the vehicle was running and a person, later identified as Deborah Harris, the brother's girlfriend, was in the driver's seat. Officer Neague exited the police cruiser just after Officer Sawyer and was focused on Defendant's brother. Neither officer drew his weapon. Officer Sawyer made eye contact with Defendant and asked, "Can I speak with you a moment?" Defendant, who was standing at the rear trunk area of the vehicle, near the license plate, immediately began to move clockwise to the driver's side of the vehicle near the rear tire, placing the vehicle between himself and Officer Sawyer. Defendant was "hunched over" and appeared to be fidgeting with something in his waistband, and Officer Sawyer directed Defendant to show his hands. Defendant did not immediately comply and as Officer Sawyer closed the distance between himself and Defendant, Officer Sawyer heard what sounded like metal hit the ground, followed by the sound of metal scraping the ground. Defendant then put his hands on the trunk of the car, as ordered by Officer Sawyer, and consented to a pat-down search, which revealed no weapons. Officer Sawyer acknowledged that at this point, Defendant would not have reasonably felt free to leave, because Officer Sawyer had ordered Defendant to keep his hands on the trunk of the vehicle.

Officer Sawyer directed Defendant to move to the front of the vehicle and asked Officer Neague to watch Defendant while he looked under the vehicle. Officer Sawyer discovered a silver Ruger .45 caliber semiautomatic pistol on the ground under the car, positioned in front of the rear left tire, near where Defendant had been standing. Officer Sawyer opined that the gun was so positioned that the vehicle would have had to run over it when parking had the gun been on the ground prior to the car's arrival. Officer Sawyer saw no evidence that the gun had been run over by the car. Defendant denied ownership of the gun. Officer Neague cleared the gun, which Officer

4

Sawyer testified was loaded.[4] Officer Sawyer did not request the gun be fingerprinted and did not check Defendant, or the others present, for GSR.

Upon retrieving the gun, Officer Sawyer performed a record check and determined that Defendant had a prior felony. Defendant was then handcuffed and searched. Officer Sawyer found a pair of cotton gloves in Defendant's pocket and discovered eye holes cut in the toboggan Defendant was wearing. Harris, the driver and custodian of the vehicle, consented to its search, which yielded only a length of white rope found on the back seat.[5] Defendant's brother claimed ownership of the rope and stated he used it to tie down junk. The entire encounter took only minutes and, shortly after Defendant's arrest, other police cruisers arrived on the scene and Defendant was transported to the police station for booking.

On cross-examination, Officer Sawyer testified that he did not know that Defendant had previously worked at the Sweepstakes and that he did not see Defendant's brother come out of the Sweepstakes before engaging in a conversation with Defendant. Officer Sawyer stated that over the course of his employment with the Greenville Police Department, he had stopped numerous persons wearing jackets and toboggans in the summer, because he believed it to be suspicious. Officer Sawyer did not arrest Defendant's brother or Harris, because they were not standing in proximity to where he heard the metal sound on the concrete and later found the gun. Officer Sawyer denied that the trunk of the vehicle obstructed his view of Defendant so that he could not see Defendant

---

[4] Defendant's counsel challenged Officer Sawyer's testimony that the gun was loaded, questioning whether Officer Sawyer had written in his report that the gun was not loaded, but did not offer the report containing the alleged statement into evidence. The only reports of record are silent on the issue. *See* Gov't Exs. 6 & 8.

[5] Officer Sawyer did not recall whether Harris was the owner of the vehicle, but determined that she had control of the keys, was driving the vehicle, and the vehicle was not stolen. There appears to be no dispute that Harris gave knowing and voluntary consent for Officer Sawyer to search the vehicle and that she had the authority to do so. *See United States v. Scott*, 463 F. App'x 216, 218 (4th Cir. 2012) ("In determining whether officers were given consent to a Fourth Amendment intrusion, this court must determine, under the totality of the circumstances, whether consent was knowing and voluntary.") (citing *United States v. Mendenhall*, 446 U.S. 544 (1980)).

5

fumbling in his waistband, but did admit he could not see exactly what Defendant appeared to be fumbling with, and Officer Sawyer further denied that he was too far away to hear the sound of metal hitting the ground. Officer Sawyer acknowledged that it was not illegal to wear a flight jacket and toboggan or to carry gloves in the summer time.

## III. DISCUSSION

Defendant has moved to suppress all physical evidence seized on June 28, 2012, on the grounds that the search and seizure violated the Fourth Amendment, specifically that Officer Sawyer lacked the requisite reasonable suspicion to detain and search Defendant. Def.'s Mem. at 3-4 [DE-27].

The Fourth Amendment guarantees the right of the people to be secure against unreasonable searches and seizures. U.S. Const. amend. IV. To protect this right, a warrantless arrest is permissible only when there is probable cause to believe that the person being arrested is committing or has committed a felony based on the "totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983). However, an officer may "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).

### A.     Officer Sawyer's Initial Approach and Questioning of Defendant was not a Seizure.

Defendant first argues that Officer Sawyer had no reasonable suspicion to initiate an encounter with Defendant, because Defendant was doing nothing illegal. The Fourth Amendment does not prohibit some questioning of an individual by law enforcement in a public place without any suspicion of criminal activity. *United States v. Wilson*, 953 F.2d 116, 121 (4th Cir. 1991) (citing

6

*Florida v. Bostick*, 501 U.S. 429, 434 (1991)).

> [A] seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free "to disregard the police and go about his business," *California v. Hodari D.*, 499 U.S. 621, 628, 111 S. Ct. 1547, 1552, 113 L. Ed. 2d 690 (1991), the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature.

*Bostick*, 501 U.S. at 434. "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Id.* (quoting *Terry*, 392 U.S. at 19 n.16). "Whether a seizure occurred depends on the totality of the circumstances, and the test has an objective component to the extent that it is a reasonable person's interpretation of the police conduct that is determinative." *Wilson*, 953 F.2d at 121 (citing *United States v. Gordon*, 895 F.2d 932, 937 (4th Cir. 1990)). Furthermore, "[w]hether a seizure occurred at all is an intensely fact-bound matter[.]" *Id.* The relevant inquiry is whether "the hypothetical reasonable person would have felt free to ignore [the officer's] questions and go on his way[.]" *Id.* The Fourth Circuit has explained that "freedom to leave means fundamentally the freedom to break off contact, in which case officers must, in the absence of objective justification, leave the [person] alone." *Id.* at 122 (quoting *United States v. Flowers*, 912 F.2d 707, 712 (4th Cir.1990)).

It is not necessary to determine whether Officer Sawyer's observation of Defendant wearing a heavy jacket and toboggan on a hot, humid summer night, approaching a Sweepstakes business just after closing time, in a high crime area, constitutes reasonable suspicion for a *Terry* stop, because Officer Sawyer did not need reasonable suspicion to simply approach and ask to speak with Defendant. *See Bostick*, 501 U.S. at 434. When Officer Sawyer first encountered Defendant, he addressed Defendant in a conversational tone, Officer Sawyer and Officer Neague did not have their guns drawn and did not physically obstruct Defendant's ability to walk away, and the police cruiser

7

was parked approximately 20 yards from Defendant, beside a gasoline pump and facing away from Defendant's location, not blocking the path of the vehicle by which Defendant was standing. *See United States v. Gray*, 883 F.2d 320, 322-23 (4th Cir. 1989) (factors frequently considered by courts in evaluating whether an officer displayed a show of authority are (1) the number of officers present, (2) whether the officers were in uniform or displayed their weapons, (3) whether the officers touched the defendant or made efforts to physically block or restrain his movement, (4) whether the officer's questioning was conversational or intimidating, (5) whether the officer informed the defendant he was suspected of criminal activity rather than treating the encounter as routine, and (6) whether the officer promptly returned any requested identification). Further, while Defendant argues that a number of police cars arrived on the scene shortly after Officers Sawyer and Neague, Officer Sawyer's testimony was that these other police cars did not arrive prior to Defendant's arrest. Thus, the presence of these other police cars is not relevant where Defendant was already seized at the time they arrived.

At the point Officer Sawyer first approached Defendant and asked if he could speak with him, there is no evidence to support that a reasonable person would not have felt free to break off the encounter. Therefore, no seizure occurred by Officer Sawyer simply approaching Defendant and asking if he could speak with Defendant. The nature of the encounter, however, quickly evolved. Defendant, in response to Officer Sawyer's request to speak with him, moved from the back of the vehicle to the driver's side, placing the vehicle between himself and Officer Sawyer, "hunched over" fumbling with something in his waistband, and Officer Sawyer heard the sound of metal hitting the ground and a scraping sound. Officer Sawyer testified that, in response to Defendant's movements, he began to close the distance between himself and Defendant more quickly and ordered Defendant to put his hands on the vehicle. It is at this point that a reasonable person would not have felt free

8

to leave and Officer Sawyer had affected a seizure of Defendant.

**B.     Officer Sawyer had Reasonable Suspicion to Seize Defendant When he Ordered Defendant to Place his Hands on the Vehicle.**

Defendant next argues that the only articulable reason given for Defendant's seizure was that he was wearing the wrong clothes. Courts assess the existence of reasonable suspicion for *Terry* stops by examining the "totality of the circumstances." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). In so doing, courts must consider "all information available to an officer and any reasonable inferences to be drawn at the time of the decision to stop a suspect." *United States v. Crittendon*, 883 F.2d 326, 328 (4th Cir. 1989). The reasonable suspicion standard is not particularly onerous, yet requires more than an "inchoate and unparticularized suspicion or 'hunch.'" *Sokolow*, 490 U.S. at 7 (quoting *Terry*, 392 U.S. at 27). A number of factors have been found to properly contribute to an officer's determination that there is reasonable suspicion, including presence in a high crime area, *United States v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993), information received from informants, *Alabama v. White*, 496 U.S. 325, 329-30 (1990), and evasive conduct, *United States v. Sprinkle*, 106 F.3d 613, 618 (4th Cir. 1997). If there is reasonable suspicion to conduct a *Terry* stop of a suspect and the officer reasonably believes that the suspect may be armed and dangerous, the officer may then conduct a so-called *Terry* frisk and limited search for weapons. *United States v. Mayo*, 361 F.3d 802, 805 (4th Cir. 2004).

While Defendant's attire is what first attracted Officer Sawyer's attention, there were a number of intervening acts between the time Officer Sawyer first observed Defendant and the time Defendant was seized, which provided Officer Sawyer with reasonable suspicion for an investigative stop, namely: Defendant's furtive behavior, failure to initially comply with Officer Sawyer's directive to show his hands, and Defendant's act of appearing to discard something from his

9

waistband coupled with the sound of metal hitting the ground. *See United States v. Spearman*, 254 F. App'x 178, 182 (4th Cir. 2007) (recognizing that furtive or abrupt movement as officers approach is a relevant factor giving rise to reasonable suspicion); *United States v. Griffin*, 589 F.3d 148, 153 (4th Cir. 2009) (recognizing that officers may consider "a suspect's evasive behavior in analyzing the existence of reasonable suspicion to believe that an individual is armed and dangerous") (citing *Mayo*, 361 F.3d at 807–08). Had Defendant simply declined Officer Sawyer's request and gone about his business, the question of whether Officer Sawyer had reasonable suspicion to justify a *Terry*-type non-consensual stop and frisk would be a much closer one. Yet, here, Defendant's response was evasive and, coupled with the other factors previously mentioned, *e.g.*, the suspicious clothing and the high crime area, created reasonable suspicion for a brief investigatory detention.

## C. Officer Sawyer's Protective Sweep for Weapons and Search of the Vehicle was Justified.

Defendant finally argues that Officer Sawyer's seizure of the gun was unlawful because Defendant was already seized and handcuffed when Officer Sawyer performed a search of the immediate area near where Defendant was standing, *i.e.*, under the vehicle. Defendant relies on the case of *Arizona v. Gant*, 556 U.S. 332 (2009), in which the Supreme Court held that a search incident to arrest after the driver had been arrested, handcuffed, and locked in the back of a patrol car was unreasonable "[b]ecause police could not reasonably have believed either that [defendant] could have accessed his car at the time of the search or that evidence of the offense for which he was arrested might have been found therein[.]" 556 U.S. at 344. However, *Gant* is inapposite here where Defendant was neither under arrest nor handcuffed when Officer Sawyer conducted the search and seized the gun. *See Griffin*, 589 F.3d at 154 n.8 (declining to apply *Gant* where defendant had

10

not yet been arrested at the time of the search).

The circumstances of the present case are more akin to a "protective sweep" of a vehicle during a traffic stop, which the Supreme Court, in *Michigan v. Long*, 463 U.S. 1032 (1983), found to be permissible when law enforcement "possess a reasonable belief of both (1) the suspect's dangerousness and (2) the possibility that the suspect might gain immediate control of any weapons inside the vehicle." *Griffin*, 589 F.3d at 153 (citing *United States v. Holmes*, 376 F.3d 270, 276 (4th Cir. 2004)). Here, Officer Sawyer observed what he reasonably construed to be Defendant attempting to conceal and discard a gun underneath the vehicle. This, coupled with the fact that Officer Sawyer was in a high crime area and was suspicious of criminal activity–based on Defendant's dress and attempt to gain entry into the closed Sweepstakes while a running car with the passenger door open was waiting–provides the requisite reasonable belief that Defendant was dangerous. *Id.* at 153-54 (finding factors such as being in a high crime area and evasive behavior by the suspect as relevant to dangerousness inquiry).

With respect to the immediate control prong, the fact that Defendant was no longer standing near the area searched and was being watched by Officer Neague is of no import. As the Fourth Circuit explained in *Griffin*, where a suspect is being detained pursuant to a *Terry* stop, "[i]f [the suspect] had been released after the brief detention, as he presumably would have been, he would have regained access to his vehicle and any weapon inside." *Id.* at 154 (citing *United States v. Elston*, 479 F.3d 314, 320 (4th Cir. 2007) ("[A] protective search is authorized even if the suspect is under police restraint at the time the search is conducted, because the suspect may be able to escape such restraint, or may later regain access to the vehicle if he is not arrested.")). Accordingly, where Defendant was merely subject to a brief, investigatory *Terry*-type stop, it was reasonable for Officer Sawyer to believe that Defendant may subsequently gain access to the area under the vehicle

11

near which Defendant was still standing. Accordingly, Officer Sawyer was justified in conducting a protective sweep of the area underneath the vehicle where the gun was found.

Furthermore, even assuming, *arguendo*, that this was a search incident to arrest to which *Gant* applies, the Supreme Court recognized in *Gant* that a search incident to arrest is justified where it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." 556 U.S. at 343 (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004)). The Court explained that in *Gant* there was no evidentiary basis for a search, because Gant was arrested for driving with a suspended license and police would not expect to find evidence of this in Gant's car. *Id.* at 344. However, the Court was clear in *Gant* that the "evidentiary interests" of law enforcement were not undermined by the Court's decision therein. *Id.* at 346-47 (listing exceptions to the warrant requirement, including an officer's ability "to conduct a vehicle search when . . . it is reasonable to believe the vehicle contains evidence of the offense of arrest."). Here, Officer Sawyer suspected Defendant was attempting to commit a robbery and observed what he reasonably believed to be Defendant discarding a weapon underneath the vehicle. Accordingly, even under *Gant*, the search of the area underneath the vehicle would not be prohibited, because the search for evidence was related to the suspected criminal activity.[6]

In sum, Officer Sawyer's initial approach and questioning of Defendant was not a seizure, Officer Sawyer subsequently had reasonable suspicion to seize Defendant when he ordered

---

[6] It is also noteworthy that Officer Sawyer's seizure of the gun could alternatively be upheld under the theory that Defendant abandoned the gun. *See United States v. Leshuk*, 65 F.3d 1105, 1111 (4th Cir. 1995) ("The law is well established that a person who voluntarily abandons property loses any reasonable expectation of privacy in the property and is consequently precluded from seeking to suppress evidence seized from the property.") (citing *Abel v. United States*, 362 U.S. 217, 241 (1960); *United States v. Clark*, 891 F.2d 501, 506 (4th Cir.1989)). *See also United States v. Day*, 229 F.3d 1144, at *1, *6 (4th Cir. Aug. 31, 2000) (unpublished op.) (affirming denial of suppression motion based on defendant's abandonment of property seized where officers saw defendant discard a bag as they approached, which the officers recovered and determined to contain smaller bags of cocaine).

12

Defendant to place his hands on the vehicle, and Officer Sawyer's protective sweep for weapons and search of the vehicle was justified.

## CONCLUSION

For the reasons set forth above, it is RECOMMENDED that Defendant's Motion to Suppress be DENIED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation. Additionally, except upon grounds of plain error, failure to timely file written objections shall bar a party from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

SUBMITTED, the 30th day of September 2013.

Robert B. Jones, Jr.
United States Magistrate Judge