IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:13-CR-128-1-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| | ) | |
| GARY STARKIE, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on defendant's motion to suppress (DE 25). Pursuant to 28 U.S.C. § 636(b)(1), United States Magistrate Judge Robert B. Jones, Jr. entered memorandum and recommendation ("M&R") recommending that the court deny the motion (DE 36). Issues raised are ripe for ruling. For the following reasons, the court ADOPTS the M&R in full and DENIES defendant's motion to suppress.

**BACKGROUND**

On May 8, 2013, the government filed an indictment charging defendant with a sole count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924. On August 26, 2013, defendant filed a motion to suppress all evidence from a search conducted by law enforcement officers of defendant and his immediate area occurring on or about June 28, 2012. The government responded, and hearing on the motion was held on September 24, 2013. The government called the only witness at hearing, Greenville Police Department Officer W.K. Sawyer ("Officer Sawyer"). Defendant did not testify at hearing but filed an affidavit asserting facts in support of his suppression motion. The testimony of Officer Sawyer was largely conflicting with

the purported facts in defendant's affidavit.

## COURT'S DISCUSSION

The district court reviews *de novo* those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Defendant has filed no specific objections, but rather only two "general and conclusory objections," Orpiano, 687 F.2d at 47, which are (1) to the recommendation that his motion to dismiss be denied, and (2) to the M&R as a whole. Upon considered review of the record, the court, finding no clear error, adopts the M&R in full.

A.  The Facts at Issue

The findings of fact in the M&R are based upon the determination that Officer Sawyer's testimony is credible, and defendant's affidavit – to the extent it contradicts Officer Sawyer's testimony – is not. "[I]t is unlikely that a district judge would reject a magistrate's proposed findings on credibility when those findings are dispositive and substitute the judge's own appraisal." United States v. Raddatz, 447 U.S. 667, 681 n.7 (1980). Accordingly, with no specific objection filed to the findings of fact in the M&R, the court adopts the same, and recites them below.

2

Officer Sawyer is a fifteen-year veteran of the Greenville Police Department, currently assigned to the Special Operations Division, Impact II, a street level narcotics and crime suppression unit. Officer Sawyer was transporting an arrestee (unrelated to the present case) to the Pitt County Detention Center on June 28, 2012, at approximately 11:00 p.m., when he observed a person, whom he identified in court as Defendant, cross the street on foot approximately 50 yards in front of his police cruiser. Officer Sawyer noted Defendant was wearing a zipped up "flight jacket" and toboggan on a hot (approximately 82 degrees) and humid night, which Officer Sawyer found unusual and called to the attention of his partner, Officer Neague, who was seated in the rear of the police cruiser directly behind the arrestee. Officer Sawyer stopped at a traffic light and observed Defendant walk across the parking lot of City Gas, a gas station with a convenience store adjacent to an internet sweepstakes gaming business (the "Sweepstakes"). The City Gas and Sweepstakes are located in what Officer Sawyer termed a "hot spot," which is a heavily patrolled, high crime area. Defendant walked to the door of the Sweepstakes and tried the handle, but the door did not open. Defendant then began to speak to an individual, later identified as Defendant's brother, who was standing next to a vehicle that was already parked and idling in front of the Sweepstakes when Defendant arrived. After observing Defendant for approximately three to four minutes, Officer Sawyer pulled into the City Gas parking lot to further investigate what he considered to be suspicious behavior.

Officer Sawyer parked between two gasoline pumps approximately twenty feet from the vehicle parked in front of the Sweepstakes, exited the police cruiser, and approached Defendant and his brother, observing that the vehicle was running and a person, later identified as Deborah Harris, the brother's girlfriend, was in the driver's seat. Officer Neague exited the police cruiser just after Officer Sawyer and was focused on Defendant's brother. Neither officer drew his weapon. Officer Sawyer made eye contact with Defendant and asked, "Can I speak with you a moment?" Defendant, who was standing at the rear trunk area of the vehicle, near the license plate, immediately began to move clockwise to the driver's side of the vehicle near the rear tire, placing the vehicle between himself and Officer Sawyer. Defendant was "hunched over" and appeared to be fidgeting with something in his waistband, and Officer Sawyer directed Defendant to show his hands. Defendant did not immediately comply and as Officer Sawyer closed the distance between himself and Defendant, Officer Sawyer heard what sounded like metal hit the ground, followed by the sound of metal scraping the ground. Defendant then put his hands on the trunk of the car, as ordered by Officer Sawyer, and consented to a pat-down search, which revealed no weapons. Officer Sawyer acknowledged that at this point, Defendant would not have reasonably felt free to leave, because Officer Sawyer had ordered Defendant to keep his hands on the trunk of the vehicle.

Officer Sawyer directed Defendant to move to the front of the vehicle and asked Officer Neague to watch Defendant while he looked under the vehicle. Officer

3

Sawyer discovered a silver Ruger .45 caliber semiautomatic pistol on the ground under the car, positioned in front of the rear left tire, near where Defendant had been standing. Officer Sawyer opined that the gun was so positioned that the vehicle would have had to run over it when parking had the gun been on the ground prior to the car's arrival. Officer Sawyer saw no evidence that the gun had been run over by the car. Defendant denied ownership of the gun. Officer Neague cleared the gun, which Officer Sawyer testified was loaded. Officer Sawyer did not request the gun be fingerprinted and did not check Defendant, or the others present, for GSR.

Upon retrieving the gun, Officer Sawyer performed a record check and determined that Defendant had a prior felony. Defendant was then handcuffed and searched. Officer Sawyer found a pair of cotton gloves in Defendant's pocket and discovered eye holes cut in the toboggan Defendant was wearing. Harris, the driver and custodian of the vehicle, consented to its search, which yielded only a length of white rope found on the back seat. Defendant's brother claimed ownership of the rope and stated he used it to tie down junk. The entire encounter took only minutes and, shortly after Defendant's arrest, other police cruisers arrived on the scene and Defendant was transported to the police station for booking.

On cross-examination, Officer Sawyer testified that he did not know that Defendant had previously worked at the Sweepstakes and that he did not see Defendant's brother come out of the Sweepstakes before engaging in a conversation with Defendant. Officer Sawyer stated that over the course of his employment with the Greenville Police Department, he had stopped numerous persons wearing jackets and toboggans in the summer, because he believed it to be suspicious. Officer Sawyer did not arrest Defendant's brother or Harris, because they were not standing in proximity to where he heard the metal sound on the concrete and later found the gun. Officer Sawyer denied that the trunk of the vehicle obstructed his view of Defendant so that he could not see Defendant fumbling in his waistband, but did admit he could not see exactly what Defendant appeared to be fumbling with, and Officer Sawyer further denied that he was too far away to hear the sound of metal hitting the ground. Officer Sawyer acknowledged that it was not illegal to wear a flight jacket and toboggan or to carry gloves in the summer time.

M&R 2-6 (footnotes omitted).

B.   Legal Analysis

The M&R correctly determined that defendant was not seized when Officer Sawyer initially approached defendant and questioned him. "[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel

free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required." Florida v. Bostick, 501 U.S. 429, 434 (1991). In this case, Officer Sawyer merely approached defendant and asked if he could speak with him. Thus, when Officer Sawyer initiated the encounter, it was not a seizure for Fourth Amendment purposes.

The M&R also correctly concluded that the seizure began when Officer Sawyer ordered defendant to place his hands on the vehicle, and that Officer Sawyer had reasonable suspicion of criminal activity at this time. "Reasonable suspicion is a commonsensical proposition. Courts are not remiss in crediting the practical experience of officers who observe on a daily basis what transpires on the street." United States v. Lender, 985 F.2d 151, 154 (4th Cir.1993). Defendant in this case was wearing heavy winter clothing on a hot summer evening, was in a high crime area, walked around to the other side of the car when approached by Officer Sawyer, hunched over, appeared to remove something his waistband, then Officer Sawyer heard the sound of metal hitting the ground and then scraping along the ground. See United States v. Collins, 272 F. App'x 219, 222 (4th Cir. 2007) (Determining police had reasonable suspicion to stop defendant who was in a high crime area, in a place an anonymous informant had told police was an open air drug market, when he nervously moved away while reaching for his waistband). Therefore the seizure was reasonable.

Finally, for reasons given in the M&R, Officer Sawyer's seizure of the gun was also lawful. Defendant was not handcuffed or arrested at the time, therefore Officer Sawyer properly conducted a "protective sweep" of the area. See United States v. Griffin, 589 F.3d 148, 153 (4th Cir. 2009) (concluding that, during a traffic stop, if any officer has a reasonable belief that a suspect is dangerous and may gain immediate control of any weapons inside the vehicle, a protective sweep of the vehicle is permitted). Even if defendant had been arrested, Officer Sawyer's conduct would

5

Case 5:13-cr-00128-FL   Document 40   Filed 10/23/13   Page 5 of 6

have constituted a legal search incident to arrest. Police may "conduct a vehicle search when an arrestee is within reaching distance of the vehicle or it is reasonable to believe the vehicle contains evidence of the offense of arrest." Arizona v. Gant, 556 U.S. 332, 336 (2009). In this case, because of defendant's clothing, defendant's having tried the door at an internet gambling business, the running vehicle with a person already in the driver's seat, and Officer Sawyer's belief that defendant has just discarded a gun, Officer Sawyer suspected defendant of attempting to commit robbery. Therefore, his search was permissible as a search for evidence of that attempted robbery.

## CONCLUSION

In accordance with the foregoing, the court overrules defendant's objections, ADOPTS in full the findings and recommendations of the magistrate judge (DE 36), and DENIES defendant's motion to suppress (DE 25).

SO ORDERED, this the 23rd day of October, 2013.

_____
LOUISE W. FLANAGAN
United States District Judge